# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

TONYA HIGHTOWER,                )
                                )
            Plaintiff,           )
                                )
v.                              )   Case No. CIV-08-112-FHS
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Tonya Hightower (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on October 22, 1970 and was 36 years old on the date of the ALJ's decision. Claimant completed her education through the seventh grade and was in special education classes. Claimant has worked in the past as a convenience store cashier and stocker, certified nurse attendant, and a seamstress in a pants factory. Claimant alleges an inability to work beginning September 3, 2004 due to back pain, COPD, congestive heart failure, and

3

memory problems.

## Procedural History

On September 20, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act and supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, et seq.). Claimant's application was denied initially and upon reconsideration. On March 9, 2007, a hearing was held before ALJ Edward L. Thompson in Ardmore, Oklahoma. By decision dated July 16, 2007, the ALJ found that Claimant was not disabled during the relevant period. On January 19, 2008, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform her past relevant work as a cashier, fast food worker, waitress, and certified nurse attendant.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to evaluate Claimant's cardiac impairment under the appropriate listing criteria; (2) improperly disregarding medical opinion evidence that conflicted with his findings; (3) failed to consider and weigh the treating source opinion, instead relying solely upon a form completed by a reviewing agency physician; and (4) failing to make the required findings regarding the nature and demands of Claimant's past relevant work, including failing to perform the required function by function analysis.

## Evaluation of the Evidence

Claimant asserts the ALJ failed to evaluate her alleged cardiac impairment under the listing criteria contained in Listing 4.02 - the listing pertaining to congestive heart failure and cardiomyopathy. On April 10, 2004, Claimant was hospitalized in Ardmore, Oklahoma and was attended by Dr. Proddutur v. Reddy, a cardiologist. Claimant complained of shortness of breath and severe chest pain. (Tr. 319-22). Claimant took a stress test but was only able to exercise for 5 minutes before the test was stopped because of general fatigue and dyspnea. (Tr. 328). Claimant underwent a cathertization procedure which revealed normal coronary arteries, but a dilated left ventricle with moderate global hypokinesia and an ejection fraction of 35%. Dr. Reddy diagnosed

Claimant with cardiomyopathy and treated Claimant with medication. (Tr. 326-27).

On May 21, 2004, Claimant presented to the emergency room with complaints of headaches, nausea, vomiting after her heart medication had been changed by Dr. Reddy. She was diagnosed with acute non-surgical abdominal pain and acute cephalgia and prescribed medication. (Tr. 300-301).

On September 3, 2004, Claimant was admitted to the hospital and evaluated with shortness of breath, obesity, sick, in distress, and dyspneic. Claimant was diagnosed with congestive heart failure and cardiomyopathy. Claimant received a beta blocker, ace inhibitors, and intravenous diuretics. Her condition improved and she was released in stable condition. (Tr. 253-56).

On September 29, 2004, Claimant presented to the emergency room complaining of chest discomfort and shortness of breath. She was diagosed with chest pain, congestive heart failure and hypertension. Dr. Reddy ordered testing for serial troponins and ordered that she be watched clinically. (Tr. 237-38).

On November 4, 2004, Claimant again experienced shortness of breath and moderate chest pain attributable to congestive heart failure. She was diagnosed by Dr. Reddy with cardiomyopathy aggravated by exertion. (Tr. 128-29). On November 24, 2004, Claimant reported to the emergency room complaining of shortness of

6

breath. Dr. Reddy concluded Claimant suffered from bronchitis, congestive heart failure, and cardiomyopathy. (Tr. 193-94). A chest CT scan revealed cardiomegaly with moderate bilateral pulmonary edema and small bilateral pleural effusions consistent with congestive heart failure. (Tr. 210). The enlargement of Claimant's heart resolved by November 29, 2004. (Tr. 205). Dr. Reddy found Claimant "[a]t one time . . . was in full blown congestive heart failure which gradually resolved." At discharge, Dr. Reddy found Claimant's conditions included acute congestive heart failure, cardiomyopathy, chronic obstructive lung disease, and bronchitis. (Tr. 191). Dr. Reddy instructed Claimant not to engage in physical exertion and prescribed oxygen and medications. (Tr. 192).

On December 17, 2004, a Physical Residual Functional Capacity Assessment form was completed by an agency physician. Although the written findings on the form are difficult to read, the physician found Claimant suffered from cardiomyopathy which limited her activities to 10 pounds occasional lifting and/or carrying, less than 10 pounds frequent lifting, standing and/or walking for at least 2 hours in an 8 hour workday, sitting about 6 hours in an 8 hour workday, and unlimited pushing and pulling. (Tr. 396).

A Psychiatric Review Technique form was also completed by Dr. Burnard L. Pearce on December 26, 2004. He found Claimant suffered

7

from the non-severe conditions of mental retardation with special education. (Tr. 403-15).

On December 26, 2004, Claimant was again admitted to the hospital complaining of shortness of breath and chest pain. Claimant was treated with antibiotics and diuretics and was discharged on December 31, 2004 with a diagnosis of congestive heart failure, cardiomyopathy, pneumonia, and chronic obstructive pulmonary disease, mild. (Tr. 169).

On February 19, 2005, Claimant reported to the emergency room for shortness of breath. X-rays showed Claimant had an enlarged heart with congestive heart failure. EKG testing revealed Claimant with tachycardia and premature beats. Claimant was admitted with acute congestive heart failure. (Tr. 134-39). Claimant was discharged on February 22, 2005 in stable condition with a diagnosis of acute congestive heart failure, chronic obstructive lung disease with acute exacerbation, and cardiomyopathy, mild. She was prescribed medication and oxygen for use at home. (Tr. 140-41).

On May 18, 2005, Claimant underwent a consultative examination with Dr. Mohammed Quadeer. Dr. Quadeer concluded Claimant's chest discomfort was probably due to cardiomyopathy and coronary syndrome. He opined Claimant had probably had a heart attack, but noted she had no blockage of the coronary arteries. Dr. Quadeer

also found Claimant suffered from congestive heart failure with a loss of 20% of the use of her heart function. Claimant's lower back pain was found to probably be due to degenerative arthritis of the lower lumbar spine. Dr. Quadeer determined Claimant had a history of COPD and experienced anxiety and depression. (Tr. 382-83).

On June 7, 2005, a Residual Functional Capacity Assessment form was completed by Dr. Luther Woodcock, a reviewing agency physician, with regard to Claimant's ability to work. Dr. Woodcock concluded Claimant could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk about 6 hours in an 8 hour day, sit about 6 hours in an 8 hour day, and unlimited pushing or pulling. (Tr. 419).

In his decision, the ALJ found Claimant did not meet the listings for chronic pulmonary insufficiency or asthma. He also determined Claimant retained the RFC to perform a full range of light work. Additionally, the ALJ concluded Claimant would perform her past relevant work as a cashier, fast food worker, waitress, and CNA. (Tr. 27-28).

Initially, Claimant contends the ALJ erred by not evaluating whether her congestive heart failure met Listing 4.02. At step three of the sequential evaluation, an ALJ is required to determine whether a claimant's impairment "is equivalent to one of a number

9

of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) citing Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). The ALJ is required to discuss the evidence and explain why he found Claimant was not disabled at step three. Id. In this case, the ALJ failed to identify the listing relevant to Claimant's heart condition and failed to discuss his reasoning for not finding Claimant disabled under this listing. This deficiency constitutes reversible error.

Moreover, the ALJ accepted the opinion of Dr. Woodcock, an agency physician, over the opinion of Claimant's treating physician, Dr. Reddy, without providing the required reasoning for doing so. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to

controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

11

The ALJ in this case rejected out-of-hand the portion of Dr. Reddy's opinions concerning Claimant's inability to complete a stress test (which is not actually an opinion but rather a fact) and did not discuss any of Dr. Reddy's other findings. As a result, the ALJ erred in both failing to discuss Dr. Reddy's opinions or the weight he provided to those opinions outside of the stress test comment. On remand, he shall do so.

In her final assertion of error, Claimant contends the ALJ failed to make the required findings at step four concerning Claimant's ability to perform her past relevant work. At step four, the ALJ must (1) assess a claimant's RFC, (2) make specific findings regarding the nature and demands of a claimant's past relevant work, and (3) perform a function-by-function comparison between the limitations and the demands. Soc. Sec. R. 82-62. The ALJ failed to engage in any of this required analysis. Indeed, he did not obtain vocational expert testimony concerning the nature and demands of Claimant's past relevant work, instead choosing to rely upon the generic categories of work contained in the Dictionary of Occupational Titles, a practice specifically prohibited. Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996). On remand, the ALJ shall engage in the required analysis and obtain adequate evidentiary support.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of September, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE